HERBERT ACKROYD'S CASE.

Suffolk.   December 9, 1959. — January 5, 1960.

Present: WILKINS, C.J., SPALDING, COUNIHAN, WHITTEMORE, &
CUTTER, JJ.

*Workmen's Compensation Act*, Continuance, Findings by Industrial Acci-
dent Board, Recommittal to Industrial Accident Board.   *Attorney at
Law.*

Discussion of continuances sought because of engagements of counsel in
other proceedings.   [218–219]
The discretionary granting or denial by a court or administrative tribunal
of a continuance of a case sought because of engagement of counsel in
another proceeding is subject to judicial review.   [219]
In a workmen's compensation proceeding in which it appeared that a
single member of the Industrial Accident Board on the assigned hear-
ing date denied the insurer's request for a postponement of the case
because of engagement of its designated counsel in the Superior Court
on that date and heard the case in his absence, and that the reviewing
board denied a motion by the insurer's counsel to recommit the case
to the single member for the presentation of its evidence and for ex-
tension of the record pertaining to the engagement of its counsel, the
record did not contain sufficient findings by the board, with supporting
evidence, respecting the refusal of a postponement to enable the Supe-
rior Court or this court on appeal to decide whether there had been
an abuse of discretion in the refusal, and a final decree enforcing an
award of compensation must be reversed and the case recommitted to
the board for clarification and extension of the record.   [220–221]

CERTIFICATION to the Superior Court of a decision by the
Industrial Accident Board under the workmen's compensa-
tion act.

The case was heard by *Barron, J.*

*Edmund Z. Dymsza,* for the insurer.

*Fredric S. O'Brien,* for the claimant.

CUTTER, J.   This is an appeal from (a) the denial in the
Superior Court of the insurer's motions to recommit a work-

men's compensation proceeding to the Industrial Accident Board for extension of the record and a new trial, and (b) a final decree enforcing a decision of the board awarding compensation to the employee.

The report of the single member shows that he heard the case in the absence of the insurer's designated counsel. Under the heading "Appearances," the report of the hearing before the single member states, "This insurer had an attorney present who declined to represent them nor have his appearance noted but who did represent them on the conference cases assigned for today. He sat through the case but declined to represent the . . . [insurer] as he said he had no authority to appear, and he requested a postponement which was denied." The single member's decision awarding compensation says, "This case came on to be heard before me at Lawrence on January 6, 1959. The attorney for the insurer did not appear and counsel for the claimant would not agree to postponement of the case. Although attorney Robert Hermann who represented the insurer in two other matters before me on this same day sat through the proceedings, he declined to file an appearance and stated he had no authority to represent the insurer in this case."

Before the reviewing board the insurer filed a motion to recommit the case to the single member to permit the insurer to present its evidence and for an extension of the record "to show that the insurer's counsel, one Edmund Z. Dymsza, called the hearing division of this . . . board and the claimant's counsel . . . on Friday the second day of January, 1959, and advised each of his engagement before the Superior Court . . . at Salem . . . for January 6, 1959, a Tuesday . . . . Insurer's counsel requested an adjuster from the Wakefield office of the . . . [insurer] to be present at . . . [the] board sitting at Lawrence, on January 6, 1959, for the . . . only purpose of disposing of a discontinuance conference on another case . . . on that list and for the further specific purpose of representing that the insurer's counsel . . . was engaged in actual trial as set forth above."

The motion was accompanied by a letter from an assistant clerk of court for Essex County certifying that Mr. Dymsza was "in actual attendance in . . . the Superior Court . . . at Salem . . . on Tuesday, January 6, 1959, from 10 A.M. to 1 P.M." The reviewing board incorporated the motion and letter by reference in its findings and decision and found "counsel for the insurer telephoned the hearing section of the . . . board on Friday, January 2, 1959, . . . informing of his engagement in the Superior Court and requesting a postponement of the assignment. The principal clerk in charge of the hearing section informed Attorney Dymsza, routinely, that it would be necessary that he obtain consent of claimant's counsel. He telephoned later that he was unable to obtain that consent. He was then informed that he would have to take up his request with the board member at the time of the scheduled hearing. The reviewing board deny the insurer's motion, principally for the reason that it was not necessary that Attorney Dymsza act as trial counsel on the date in question. This insurer is engaged in the business of workmen's compensation insurance in this Commonwealth extensively, and to our knowledge has a number of attorneys who appear before this board in the trial of cases in addition to Attorney Dymsza, namely, Thomas F. Daley, Esquire, and William F. Callahan, Esquire. On January 6, 1959, a Boston assignment of this insurer . . . was postponed at the insurer's request, with agreement of claimant's counsel, because the insurer's counsel was engaged 'in court.' Although this board was holding hearings in Quincy, Taunton and Worcester on that date this company had no other assignment."

Before the Superior Court, in support of the motions to recommit the case to the board, the insurer filed affidavits of five attorneys employed by the insurer. Messrs. Callahan and Daley made oath that on January 6, 1959, they were each engaged in actual trial of separate cases in the Superior Court. Mr. McCabe stated that on that date he was recuperating from illness and "under instructions . . . of . . . [his] doctor not to engage in the trial of cases." Mr.

Hermann stated that, although he was an attorney, he was employed by the insurer as a claims adjuster, that he had "not engaged in the practice of law" and had "no trial experience," that on January 6, 1959, his instructions from Mr. Dymsza were that he was to handle "two discontinuance conferences" before the board at Lawrence on cases to which he had been assigned from the beginning of the claims, and that, in the Ackroyd case about which he "had no knowledge of the contents of the . . . file," he was to state to the board Mr. Dymsza's engagement in Salem, "that no other counsel was available . . . [and] that . . . [Mr. Dymsza] desired the Ackroyd case to stand until he completed his engagement at Salem," or a continuance. This affidavit further stated (1) that Mr. Hermann informed the board of the facts, then talked by telephone with Mr. Dymsza at Salem, and was told by the latter that "he would hurry to Lawrence as soon as his engagement was completed"; (2) that this information was "relayed to the commissioner"; (3) that thereafter trial proceeded in the Ackroyd case in the absence of any counsel for the insurer; and (4) that the case was concluded and all concerned left the hearing room before 12:45 P.M.

Mr. Dymsza's affidavit outlined the circumstances already set forth and in addition said (1) that at the argument before the reviewing board he appeared with Mr. Callahan and proposed that he (Mr. Dymsza) "be put under oath and . . . take the witness stand"; (2) that the presiding commissioner and the employee's counsel each "indicated that he would take . . . [Mr. Dymsza's] statements as to the . . . facts as true"; (3) that on January 2, 1959, after checking to see whether any of his own associates would be available on January 6, he had explained the circumstances to opposing counsel, who had said that "he was not interested in . . . [Mr. Dymsza's] predicament and . . . would insist on proceeding with the Ackroyd case"; (4) that the single member was "well aware of the entire situation and . . . that Mr. Hermann did not have the Ackroyd file . . . authority to act for the company as an attorney . . . [or]

trial experience"; (5) that in this conflict of assignments, he "felt . . . bound to appear at the Superior Court rather than [before the single member] at Lawrence" because the former was "the tribunal of superior jurisdiction"; (6) that at no time had he been "guilty of any dilatory tactics" in the Ackroyd case, which had been "scheduled for trial once before January 6, 1959," and postponed by the board itself; and (7) that the insurer had evidence to present that Ackroyd's disability flowed from events unconnected with his employment.

The granting of a continuance because of an engagement of counsel is a matter within the sound discretion of a court or an administrative board, subject to any applicable statutory provisions and court or administrative rules. See e.g. Rule 57A of the Superior Court (effective September 1, 1956). The trial judge or administrator will be reversed only for error of law or abuse of discretion, under general principles stated fully in *Davis* v. *Boston Elev. Ry.* 235 Mass. 482, 496–497, in respect of the exercise of judicial discretion. See *Noble* v. *Mead-Morrison Mfg. Co.* 237 Mass. 5, 16; *Commonwealth* v. *Festo*, 251 Mass. 275, 277–278; *Tomlinson* v. *Flanagan*, 287 Mass. 38, 46; *Mowat* v. *DeLuca*, 330 Mass. 711, 712. In the *Festo* case, reference was made to the repeal by St. 1912, c. 542, of R. L. c. 173, § 81, which formerly gave greater protection to counsel actually engaged in court than now exists, and it was pointed out that leaving the matter of continuances to the sound discretion of the court was "the only way in which the trial of causes can proceed in an orderly and expeditious way under present conditions."

Because of congestion of cases, courts and boards must be in a position fairly to require (a) attorneys practising before them to have a reasonably adequate number of associates to enable prompt trial when reached in the causes in which they are retained; and (b) litigants and others, such as insurance companies, interested in many cases, to employ or retain sufficient qualified lawyers so that in normal course engagements of counsel will not unreasonably delay justice. Nevertheless, even large law firms and the legal departments

of large concerns, as well as smaller law offices, on occasion will run into unavoidable conflicts of engagements, peak loads well above the predictable volume of work, illnesses and absences of attorneys, and similar events. Such exceptional situations usually can be taken care of by sound judicial and board administration. There will be cases, however, in which this will not suffice. The question will then arise whether the granting or denial of a continuance may be so arbitrary and capricious, may so fail to take into account relevant facts, or may be so based upon inappropriate considerations, as to amount to an abuse of discretion. Judicial and administrative discretion in such matters is not unlimited and its exercise is subject to judicial review. See *Tierney* v. *Coolidge*, 308 Mass. 255, 261 (postponement held improper in the circumstances of that case); *Knapp* v. *Graham*, 320 Mass. 50, 55–59 (refusal of continuance improper under war time conditions and in light of relevant Federal regulations).

Assuming the facts stated in the affidavits to be true for the purposes of the present discussion, we have before us a case where nothing in the record suggests any dilatory behavior by the insurer. The case once before had been assigned and had been ready for trial. It was then postponed by the board itself. When the case was reassigned for January 6, insurer's counsel seasonably and properly notified the board that he must give priority to an assignment in a court of superior jurisdiction on a workmen's compensation appeal. All usual compensation trial counsel of the insurer, who were not ill, happened also to be engaged that day in the Superior Court. The insurer reasonably did not wish to leave the trial to an inexperienced adjuster, who was present only to deal with other routine matters and to request a continuance in this matter. This was obviously a serious case in which a young attorney without trial experience, and without the file or any familiarity with it, would hardly have been a suitable representative of the insurer. Refusal of the opportunity to have a case tried by counsel with knowledge of the case we have regarded in some circumstances as a

denial of due process in a criminal prosecution. See *Lindsey v. Commonwealth*, 331 Mass. 1, 4. We recognize fully the administrative problems of the board (see Badger, Workmen's Compensation, 3 Boston Bar Journ. No. 11, p. 3) and that it has congestion difficulties comparable to those confronting trial courts. We recognize also that the single member, in refusing a continuance, may have relied upon circumstances which do not appear in the board's decision. The record, for example, contains evidence that the employee was a very sick man, whose condition was worsening rapidly. The single member and the employee's counsel may well have been concerned about this circumstance. Even so, there hardly seems to have been such exigency about the employee's condition as would have made impossible hearing the case on the afternoon of January 6, instead of the morning, or reassigning the case promptly for hearing within a few days. Nothing in the record shows that this insurer was habitually short of available trial counsel or that it had been warned, even once, to increase its staff of available trial lawyers (cf. the efforts made to deal with this type of situation in the Superior Court; see Reardon, Civil Docket Congestion, 39 B. U. L. Rev. 297, 310–312). No suggestion appears that the insurer did not handle its work before the board with efficiency and promptness. There is no showing that the insurer had sought any prior continuance in this case. There is no finding that the insurer, in the time available, could reasonably have been expected to retain competent outside counsel to try the case. If the facts stated in the affidavits are true, they present a serious question whether there has been abuse of discretion.

The present record, however, did not place the Superior Court, nor does it place us, in a position to determine the matter. The reviewing board and the single member have made inadequate findings about the refusal of a continuance, obviously the principal matter as to which an appeal would be sought. The record does not contain the applicable rules of the board on the subject of assignments and continuances, if there are any such rules. If Mr. Dymsza's

affidavit is true, the reviewing board and the employee's counsel took Mr. Dymsza's statements as counsel in lieu of sworn testimony. The board should have made full subsidiary findings of fact on the basis of those statements and should have reported or summarized those statements and any other evidence relevant to the refused continuance so that we might know whether subsidiary findings thus made had adequate support in the evidence.

Without such findings we cannot determine with reasonable certainty whether there has been abuse of discretion and whether, in reviewing the single member's action, the board has taken into account all relevant considerations. See *Judkins's Case,* 315 Mass. 226, 227; *Messersmith's Case, ante,* 117, 119–120.

In the circumstances, the case must be sent back to the board for clarification and extension of the record. It may be that, in the course of this action, the board will come to the conclusion that the appropriate procedure will be to reopen the case before the single member either for complete retrial or to permit (a) cross-examination of those witnesses called by the employee who are still available and able to testify, and (b) the insurer to present its affirmative case. If the board does not take some such course, review of the exercise of its discretion may then be had in the Superior Court upon adequate findings.

The final decree is reversed. The case is to be remanded to the board for further proceedings consistent with this opinion.

*So ordered.*